# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br>   v.<br>DAVID ROSALES-AGUILAR,<br><br>                       Defendant. | Case No. 13cr3254 BTM<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT DUE TO INVALID DEPORTATIONS** |

Defendant has filed a motion to dismiss the indictment in this case on the ground that his prior deportations were invalid. Previously, the Court held that Defendant's March 28, 2006 and December 1997 removals were valid. The issue now before the Court is whether Defendant's expedited removals on January 16, 2013 and June 22, 2013 were valid. For the reasons discussed below, the Court finds that the expedited removals were valid and therefore **DENIES** Defendant's motion to dismiss the indictment.

## I. GOVERNING LAW

To sustain a collateral attack under 8 U.S.C. § 1326(d), a defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial

review; and (3) the entry of the order was fundamentally unfair. United States v. Ubaldo-Figueroa, 364 F.3d 1047, 1048 (9th Cir. 2004). An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. Id. When the alleged defect in the deportation proceedings consists of the IJ's failure to inform the defendant regarding his possible eligibility for relief from deportation, in order to establish prejudice, the defendant must only show that he had a plausible ground for relief from deportation. United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1998).

An alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). However, the exhaustion requirement of 8 U.S.C. 1326(d) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001). "[A] waiver is not considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge fails to advise the alien of this possibility and give him the opportunity to develop the issue." Id. at 1182 (internal quotation marks omitted). "Even in expedited removal proceedings . . . an alien's waiver of the right to appeal must be both considered and intelligent in order to be valid." United States v. Reyes-Bonilla, 671 F.3d 1036,1043 (9th Cir. 2012).

## II. DISCUSSION

Defendant challenges both his January 16, 2013 and June 22, 2013 expedited removals. As discussed below, the Court finds that both of the expedited removals were valid.

A. <u>January 16, 2013 Expedited Removal</u>

Defendant challenges his January 16, 2013 expedited removal on the grounds that (1) he was placed into expedited removal proceedings even though he claimed a fear of torture and persecution upon his arrest; (2) he was not advised of his eligibility for relief under the Convention Against Torture ("CAT") or his apparent eligibility for a U-Visa or asylum; (3) he was not advised of his eligibility for withdrawal of his application for admission; and (4) he did not sign the back of the Form I-860, Notice and Order of Expedited Removal.

The Court holds that Defendant was not deprived of his due process rights by being placed into expedited removal proceedings or by not being advised of his eligibility for CAT, U-Visa, or asylum relief. As pointed out by Defendant, aliens who claim a fear of persecution or torture are not eligible for expedited removal proceedings. 8 U.S.C. § 1225(b)(1)(ii). However, at the time of the expedited removal proceedings, Defendant stated that he had no fear of persecution. The Jurat for Record of Sworn Statement (Gov't Ex. 9A), signed by Defendant on January 16, 2003, reflects that Defendant answered "No" to the questions "Do you have any fear or concern about being returned to your home country or being removed from the United States?" and "Would you be harmed if you are returned to your home country or country of last residence?"

Defense counsel questions the reliability of the Sworn Statement and Jurat attached thereto on the ground that the form does not indicate which, if any, questions were translated into Spanish and does not identify the interpreter. Defense counsel points out that upon Defendant's arrest on July 26, 2012, Defendant stated that he did have a fear of persecution or torture should he be returned to Mexico. (Def. Exs. D, E.)

Although the Sworn Statement and Jurat dated January 16, 2003 suffer from technical defects, the Court finds that Defendant was asked the question

regarding whether he feared torture or persecution in Spanish and answered "No." Henry Jurgilewicz, Jr, the ICE Agent who took Defendant's statement, testified at an evidentiary hearing on November 26, 2013 and December 3, 2013. Jurgilewicz testified that if a person claims fear, he does not proceed with the expedited removal, but instead arranges for a credible fear interview to take place. (Tr. of 11/26/13 Hr'g at 22:24-11.) Jurgilewicz explained that sometimes individuals who initially claim fear change their minds because they do not wish to be incarcerated any longer and wish to be removed. (Id. at 23:16-20.) When he writes on the form "English/Spanish," as in this case, that means that he talked to the individual in English as well as in Spanish through a Spanish-speaking agent. (Id. at 24:15-25:7.) According to Jurgilewicz, it would have been his practice to have the questions regarding torture and persecution translated into Spanish, even if the subject spoke some English, because Jurgilewicz knows those questions are very important and wants to make sure the subject understands them. (Tr. of 2/3/13 Hr'g at 34:2-10; 47:4-10.)

The Court found Agent Jurgilewicz to be credible and made a finding of fact that Defendant stated on January 16, 2013, that he did not have a fear of being returned to Mexico (Tr. of 2/3/13 Hr'g at 62:3-4; 64:3-5.) The Court explained that whatever fear Defendant may have had in July 2012 may very well have dissipated by January 2013. (Id. at 62:18-19.) Indeed, in July 2013, Defendant again stated that he did not have any fear of being returned to Mexico. (Gov't Exs. T, U.)

Given that Defendant himself told Agent Jurgilewicz that he did not have any fear of torture or persecution, the Court concludes that there was no due process violation in continuing with the expedited removal and not advising Defendant regarding potential CAT, asylum, or U-Visa relief. Defendant has not provided any authority for the proposition that once an alien claims fear, a

credible fear determination must be made and the alien cannot be placed in expedited removal proceedings, *even if the alien subsequently states that he has no fear of being returned to his country*. Indeed, an alien who claims that he has no fear but is nonetheless taken out of expedited removal proceedings and placed in asylum proceedings could complain that he is being denied his right to a speedy removal. Agent Jurgilewicz was justified in relying upon Defendant's representation that he had no fear and cannot be faulted for not initiating asylum proceedings.

Defendant also argues that he was denied due process because he was not advised of his eligibility for withdrawal of his application for admission. However, the Ninth Circuit has held that it is not a due process violation when an alien in expedited removal proceedings is not informed about the possibility of withdrawal of application. United States v. Sanchez-Aguilar, 719 F.3d 1108, 1112 (9th Cir. 2013). In Sanchez-Aguilar, the Ninth Circuit explained that non-admitted aliens seeking entry at the border are "entitled only to whatever process Congress provides." Id. (quoting United States v. Barajas-Alvarado, 655 F.3d 1077, 1088 (9th Cir. 2011)). The statute (8 U.S.C. § 1225(b)(1)) and regulation (8 C.F.R. § 235.3) governing expedited removal proceedings set forth the procedural rights for aliens in such proceedings but do not provide for the right to be informed of potentially available avenues of relief. Id. Therefore, failure to inform an alien in expedited removal proceedings of his ability to request withdrawal of his application for admission does not constitute a due process violation. Id.

Defendant's final argument regarding the January 16, 2013 expedited removal is that the immigration officers violated the regulations (8 C.F.R. § 1235.3(b)(2)(I)) by failing to advise him of the allegations against him. According to Defendant, because the Form I-860 (Gov't Ex. 11) is not signed by him, there is no evidence that the agents read the charges to him or gave

him any opportunity to respond to the charges. However, technical errors do not give rise to a due process violation. See United States v. Catarino Minero-Rojas, __ Fed. Appx. __, No. 12-50510 (9th Cir. Feb. 19, 2014) (affirming this Court's denial of defendant's motion to dismiss indictment, which challenged expedited removals for technical errors and for failure to inform the defendant of withdrawal of application). Defendant has not presented evidence that he was not actually informed of the charges against him. At any rate, even assuming Defendant was not properly advised of the charges against him and given the chance to respond, Defendant has not established that he suffered any prejudice as a result.

Defendant has not shown that he suffered due process violations that resulted in prejudice to him. Therefore, the Court finds that the January 16, 2013 expedited removal was valid.

B. June 22, 2013 Expedited Removal

Defendant also challenges his June 22, 2013 expedited removal on the grounds that (1) Officer Padilla, who took Defendant's sworn statement, did not sign the Form I-867B; and (2) Officer Padilla failed to account for Defendant's drug use and his inebriation at the time of his apprehension and failed to consider all relevant factors in considering whether Defendant should be allowed to withdraw his application of admission.

Officer Padilla did not personally sign the Form I-867B (Def. Ex. T), but, rather, had Officer Wood sign "for" him. On February 11, 2014, Officer Padilla testified that although he does not recall why Officer Wood signed for him, he personally conducted Defendant's interview, asked Defendant the questions in Spanish, and took down Defendant's answers verbatim. (Tr. of 2/11/14 H'rg at 62:24-63:5; 63:16-64:23.) He also reviewed the questions and answers with Defendant to verify that the answers were correct and then had Defendant

initial the pages of the statement and sign the last page. (Id. at 66:12-20, 67:5-22.) As mentioned above, mere technical errors do not give rise to a due process violation. Moreover, even if it was not technically correct to have Officer Wood sign "for" him, there was no prejudice as a result.

Defendant argues that the prejudice was the improper denial of withdrawal of application. However, this alleged prejudice does not flow from any defect in the Form I-867B. See Ubaldo-Figueroa, 364 F.3d at 1048 (explaining that an underlying removal order is fundamentally unfair if a defendant's due process rights were violated by defects in the proceedings and "he suffered prejudice *as a result* of the defects.") (Emphasis added). Therefore, the Court analyzes the alleged defects in the withdrawal of application procedures as a separate due process claim.

Defendant concedes that Officer Padilla considered whether to allow withdrawal of application on June 22, 2013, as evidenced in the Form I-275 and Discretionary Authority Checklist (Def. Exs. U, V). However, Defendant contends that the analysis was faulty because Officer Padilla failed to take into account the "critical fact" of Defendant's drug use and his state of inebriation at the time of his apprehension. At oral argument on February 19, 2014, Defense counsel further argued that based on Officer Padilla's testimony, Officer Padilla decided to deny withdrawal of application before interviewing Defendant and therefore could not have properly considered all six of the factors set forth in the Inspector's Field Manual, rendering his decision arbitrary and capricious.

As an initial matter, the Court doubts that Defendant can premise a due process claim on Officer Padilla's alleged failure to properly consider factors when determining whether withdrawal of application should be granted. As discussed above, Defendant did not even have a right to be informed of his ability to request withdrawal of application. A fortiori, Defendant, who received

the benefit of a determination regarding withdrawal, cannot establish a violation of his due process rights by pointing to alleged flaws in the decision-making process resulting in the denial of relief.

Even if Defendant could base a due process claim on failure to follow internal procedures when determining whether to grant withdrawal of application, the Court finds that there was no prejudice. The Inspector's Field Manual sets forth six factors an immigration officer should consider in evaluating an alien's request for permission to withdraw: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations. United States v. Barajas-Alvarado, 655 F.3d 1077, 1090 (9th Cir. 2011). Applying these factors to Defendant's case, the Court concludes that he did not have a plausible claim for relief.

Defendant's immigration violation was serious because Defendant had been removed on multiple prior occasions, and there had been previous findings of inadmissibility. See Barajas-Alvarado, 655 F.3d at 1090. Because of his prior immigration history, including an expedited removal several months earlier, the immigration officer would probably conclude that Defendant intended to violate the law by attempting to enter the United States without permission.

Defendant argues that if Officer Padilla had asked Defendant about his drug or alcohol use, he would have learned that Defendant was inebriated at the time of arrest, a fact that bears upon intent. However, the Court is not convinced that Officer Padilla was required to inquire whether Defendant was under the influence of drugs or alcohol. Officer Padilla testified that he does not take a sworn statement if the subject appears intoxicated or otherwise

impaired. (Tr. of 2/11/14 Hr'g at 68:7-22.) Although Officer Padilla does not specifically recall Defendant's physical appearance or demeanor on June 22, 2013 (id. at 80:5-13), he did have the opportunity to observe him and apparently concluded that he did not appear intoxicated. Officer Moreno, the officer who first approached Defendant while he was in the line for entry, testified that Defendant did not seem intoxicated. (Id. at 19:18-20:15.) Because Defendant did not appear intoxicated, Officer Padilla did not necessarily have a reason to ask Defendant about drugs or alcohol.

Moreover, even if Defendant had been asked about his drug and alcohol use, the Court questions whether Defendant would have admitted to it. During his interview, Defendant was asked whether he had any health issues or was taking any medication. (Def. Exs. T, U.) If Defendant wanted to, he could have talked about his drug addiction and alcohol use at this time. In addition, Defendant was asked, "[I]s there anything else you would like to add?" Defendant said, "No." (Def. Ex. T.)

Defendant has not explained how he could overcome the charged ground for inadmissibility. Furthermore, by 2013, Defendant was also inadmissible because he was an aggravated felon.

Defendant's age is not a helpful factor because he was 36 at the time of the removal. As for his health, Defendant again points to his drug addiction and Officer Padilla's failure to ask about it. But even if Officer Padilla had asked about his drug use and Defendant had admitted to it, the Court is not persuaded that drug addiction is the type of "poor health" that weighs in favor of granting withdrawal, especially when, as here, the subject has a prior drug conviction.

Finally, there was no indication that humanitarian or public considerations would be served by permitting withdrawal.

In sum, even if failure to properly consider all factors when determining

whether to allow withdrawal of application in expedited removal proceedings can constitute a due process violation, a doubtful proposition, the Court concludes that there was no prejudice because Defendant did not have a plausible claim for such relief.  Therefore, the Court finds that the June 22, 2013 expedited removal was valid as well.

### III.   CONCLUSION

For the reasons discussed above, the Court finds that Defendant's January 16, 2013 and June 22, 2013 expedited removals were valid and **DENIES** Defendant's motion to dismiss the indictment due to invalid deportations.

**IT IS SO ORDERED.**

DATED:  March 7, 2014

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court